ANOUSH HAKIMI (State Bar No. 228858)
anoush@handslawgroup.com
PETER SHAHRIARI (State Bar No. 237074)
peter@handslawgroup.com
ANI AVETISYAN (State Bar. No. 266679)
ani@handslawgroup.com
LAURA STEVEN (State Bar. No. 332168)
laura@handslawgroup.com

**THE LAW OFFICE OF HAKIMI &
SHAHRIARI**
1800 Vine Street
Los Angeles, CA 90028

Telephone: (888) 635 - 2250
Facsimile: (213) 402 - 2170

Attorneys for Plaintiff,
**AMBER MACHOWSKI**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBER MACHOWSKI, AN INDIVIDUAL;<br><br>　　　Plaintiff,<br><br>　　v.<br><br>KWANG JOSHUA PARK, AN INDIVIDUAL; and DOES 1-10,<br><br>　　　Defendants. | Case No.:<br><br><br>**COMPLAINT FOR VIOLATIONS OF: AMERICANS WITH DISABILITIES ACT OF 1990, 42 U.S.C. § 12181 _et seq._; UNRUH CIVIL RIGHTS ACT, CALIFORNIA CIVIL CODE § 51 _et seq._**<br><br><br><u>DEMAND FOR JURY TRIAL</u> |

**Most Americans, especially <u>Seniors,</u> become disabled at some point in life…**

FIRST AMENDED COMPLAINT

Plaintiff Amber Machowski (hereinafter referred to as "Plaintiff") complains of Kwang Joshua Park, an Individual; and Does 1-10 (each, individually a "Defendant," and collectively "Defendants"), and alleges as follows:

## I.     PARTIES

1.     Plaintiff Amber Machowski cannot walk or stand.  She is paraplegic.  She broke her back in a tragic car accident, and the subsequent back surgery left her paralyzed from the bellybutton down on the right side of her body.  Although she can move the left lower half of her body, neurological issues and muscle atrophy have resulted in weakness, reduced motor function, and limited mobility in the left lower half of her body.  Plaintiff has regularly attended physical therapy since the accident.  Plaintiff is permanently confined to a wheelchair.  She uses a manual wheelchair.  Plaintiff is qualified as being disabled pursuant to the California Unruh Civil Rights Act (UCRA) (*see* Cal. Civ. Code §§ 51, *et seq.*, 52, *et seq.*), the Americans with Disabilities Act (ADA) (*see* 42 U.S.C. § 12102, *et seq.*), and other statutory laws which protect the rights of "disabled persons."  Plaintiff has been issued permanent Disabled Person License Plates, as well as a blue permanent Disabled Person Parking Placard, by the State of California.  Plaintiff is a California resident with physical disabilities.

2.     Defendant Kwang Joshua Park, an Individual; owned the property (the "Property"), i.e., shopping center, located at 528 S State College Blvd #101,

Anaheim, CA 92806.

3.    There is a business establishment on the Property named "Basic Clothing and Uniform Anaheim" (hereinafter "the business").

4.    DOES 1 through 10 were at all relevant times lessors, lessees, property owners, subsidiaries, parent companies, employers, employees, agents, corporate officers, managers, principles, and/or representatives of Defendants.  Plaintiff is unaware of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and, therefore, sues those Defendants by fictitious names. Plaintiff requests that the Court grant leave to amend this complaint to allege the true names and capacities when determined by whatever source.

5.    Plaintiff alleges that Defendants, at all relevant times, were relevant to this action; were the owners, franchisees, lessees, general partners, limited partners, agents, employees, employers, representative partners, subsidiaries, partner companies, and/or joint ventures of the remaining Defendants; and were acting within the course and scope of that relationship.  Plaintiff is further informed and believes and alleges that each of the Defendants gave consent to, ratified, and/or authorized the acts alleged of each of the remaining defendants.

6.    Plaintiff visited the public accommodations owned, leased, and/or operated by Defendants with the intent to purchase and/or use the goods, services, facilities, privileges, advantages, and/or accommodations offered by Defendants.

## II.    JURISDICTION & VENUE

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the ADA.

8.    Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under the UCRA, which expressly incorporates the ADA.

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and is founded on the facts that the real property which is the subject of this action is located in this district, and that Plaintiff's cause of action arose in this district.

## III.    FACTS

10.    The Property owned by Defendants is a facility which is open to the public and includes business establishments.

11.    Plaintiff alleges that the Property has been newly constructed and/or underwent remodeling, repairs, or alterations since 1992, and that Defendants have failed to comply with California access standards which applied at the time of each new construction and/or alteration, or failed to maintain accessible features in operable working condition.

12.    Plaintiff visited the Property during the relevant statutory period on three (3) separate occasions, in January 2020, November 2020 and December 2020, to patronize the businesses on the Property.  She used her manual wheelchair

(which does not have "power assist," or any add-on that provides powered assistance for propelling) during all of her visits.

13.   Defendants did not offer persons with disabilities with equivalent facilities, privileges, and advantages offered by Defendants to other patrons.

14.   Plaintiff encountered barriers, both physical and intangible, that interfered with, and denied, Plaintiff the ability to use and enjoy the goods, services, privileges, and accommodations offered at the Property.

15.   Parking is one of the facilities, privileges, and advantages offered by Defendants to patrons of the Property.

16.   However, there was no accessible parking for disabled patrons.  Not one single space.  The parking space designated for disabled persons did not comply with the ADA.

17.   The parking area did not comply with the latest California Building Code ("CBC").

18.   When Plaintiff visited the Property, she experienced access barriers related to parking, signage, interior space, and paths of travel.

19.   Plaintiff encountered the following barriers at Defendants' Property:

**Basic Clothing and Uniform Anaheim and the Property it sits on needs tremendous repairs. There is one designated disabled parking space and**

**access aisle that is by no means accessible. The parking space is riddled with many pavement distresses, such as cracks, uneven ground surfaces, and slopes. The access aisle that is provided is not ADA-compliant. The access aisle is connected with a sidewalk and has a non-compliant access painted on it. Plaintiff is unable to use the access aisle because there is no safe way to disembark her vehicle. The path of travel leading into the entrance of the business also runs into many pavement distresses and uneven changes in level. The interior of the business is not accessible because of the lack of clear floor space. This Property further lacks ADA-compliant signage.**

**VIOLATION of 2010 California Building Code (CBC) § 1114B.1.2; 1991 ADA Standards for Accessible Design (ADAS) § 4.3.2(1).**  (Exterior route of travel.)  An accessible route of travel is not provided to all entrances and portions of the building, and/or between the building and a public way. Plaintiff, a wheelchair user, needs a dedicated path of travel, free of obstructions and vehicles, where (on which) she can operate her wheelchair. It is dangerous for Plaintiff to navigate in a wheelchair without a safe, protected, accessible route of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VIOLATION of 2010 CBC § 1127B.1.**  (Path of travel into building entrances.)  There is no accessible path of travel into the building entrances. Plaintiff, a wheelchair user, needs a dedicated path of travel, free of obstructions and vehicles, where (on which) she can operate her wheelchair. It is dangerous for Plaintiff to navigate in a wheelchair without a safe, protected, accessible path of travel; thus, the violation interferes with Plaintiff's ability to fully access the premises.

**VIOLATION of 2010 CBC § 1127B.1; 1991 ADAS § 4.6.2(1).** (Directional signage.)  There is no directional signage showing an accessible path of travel.  Plaintiff, a wheelchair user, faces an increased risk of injury if she is required to travel in the path of vehicles because it is more difficult for drivers to see her, and she cannot quickly move out of the way of an oncoming vehicle.  Thus, she requires clear signage directing her to a safe path away from other vehicles.

**VIOLATION of 2010 CBC § 1129B.4.**  (Off-street unauthorized parking sign – towed vehicle information.)  The tow away sign (white sign stating that "UNAUTHORIZED VEHICLES PARKED IN DESIGNATED

ACCESSIBLE SPACES … WILL BE TOWED AWAY") does not state the required information regarding the tow company and telephone number. The blank spaces of the tow-away sign have not been filled in. Plaintiff must use the designated disabled parking space, and requires the proper protections of an access aisle and an accessible route of travel to safely access the Property. Clear signage that explicitly warns of the consequences for improperly parking in the designated disabled parking space will deter others without disabilities from parking there.

**IOLATION of 2010 ADAS § 403.3.** (Path of travel – cross slope.) The cross slope of the accessible path of travel is greater than two percent (2%). Plaintiff, who uses a manual wheelchair, has difficulty navigating her mobility device on excess slopes.

**VIOLATION of 2010 CBC § 1129B.3; 1991 ADAS § 4.6.3; 2010 ADAS § 502.2.** (Faded paint – accessible parking space lines.) The paint used for the designated disabled parking space is so worn and aged that it cannot (can hardly) be seen. This makes it unclear where the actual parking space is, and makes it difficult for Plaintiff to park in the designated space. As a wheelchair user, Plaintiff needs to be able to park in the designated disabled

COMPLAINT

parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for her, as opposed to individuals who do not use wheelchairs, to maneuver about the Property.

**VIOLATION of 2010 CBC § 1129B.3; 2010 ADAS § 502.2.** (Length of parking space.)  The designated disabled parking space measures less than eighteen feet (18') long, which makes it difficult for Plaintiff to park in the designated space.  As a wheelchair user, Plaintiff needs to be able to park in the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for her, as opposed to individuals who do not use wheelchairs, to maneuver about the Property.

**VIOLATION of 2010 CBC § 1129B.3; 2010 ADAS § 502.2.** (Width of space). The parking space designated for disabled persons measures less than nine (9) feet wide. This makes it difficult for Plaintiff to park in the designated space. As a wheelchair user, Plaintiff needs to be able to park in the designated disabled parking space, which should be located closest to the entrance and linked to an accessible route of travel, because it is more difficult for her, as opposed to individuals who do not use wheelchairs, to

maneuver about the Property.

**VIOLATION of 2010 CBC § 1133B.7.1; 1991 ADAS § 4.6.8.** (Abrupt changes in level.) The path of travel from the designated disabled parking space has an uneven ground surface with changes in level exceeding one-half inch. Plaintiff, a wheelchair user, cannot fully enjoy the premises when such conditions are present. These excess changes in level pose risks to Plaintiff, including that she may fall out of her wheelchair, and/or that her wheelchair may become trapped in an uneven surface.

**VIOLATION of 2010 CBC § 1129B.3.4; 1991 ADAS § 4.6.3; 2010 ADAS § 502.4.** (Slope of parking space.) The designated disabled parking space has surface slopes in it that are greater than two percent (2%). Plaintiff, a wheelchair user, cannot access the premises because it is not safe for her to disembark from her vehicle onto a parking space surface with excess slopes.

**VIOLATION of 2010 CBC § 1129B.3.4; 1991 ADAS § 4.6.3; 2010 ADAS § 502.4.** (Slope of adjacent access aisle.) The loading/unloading access aisle adjacent to the designated disabled parking space has surface slopes in it that are greater than two percent (2%). Plaintiff, a wheelchair user, cannot access

COMPLAINT

the premises because it is not safe for her to disembark from her vehicle onto a parking space and/or adjacent access aisle surface with excess slopes.

**VIOLATION of 1991 CBC § 1129B.4.2; 2010 CBC § 1129B.3; 2010 ADAS § 4.6.3.**  (Length of adjacent access aisle.)  The access aisle adjacent to the designated disabled parking space is less than eighteen feet (18') long. This makes it difficult for Plaintiff to use the adjacent access aisle to safely disembark from the car.  Plaintiff requires adequate space to safely disembark from her car with her wheelchair.

**VIOLATION of 1991 CBC § 1129B.4.2; 2010 CBC § 1129B.3; 2010 ADAS § 4.6.3.**  (Width of adjacent access aisle.)  The loading/ unloading access aisle adjacent to the designated disabled parking space is less than five feet (5') wide.  This makes it difficult for Plaintiff to use the adjacent access aisle to safely disembark from the car.  Plaintiff requires adequate space to safely disembark from her car with her wheelchair.

**VIOLATION of 2010 CBC § 1129B.3.1; 1991 ADAS § 4.6.3; 2010 ADAS § 502.3.**  (No loading/ unloading access aisle.)  The loading/ unloading access aisle which is required to be adjacent to the designated disabled

parking space is missing.  The access aisle is connected to a sidewalk pavement. This is not an ADA-compliant access aisle. This makes it difficult for Plaintiff to use the adjacent access aisle to safely disembark from the car with her wheelchair, as Plaintiff requires sufficient space to safely disembark away from other vehicles.  Also, when an access aisle is not clearly painted, there is a greater chance that non-disabled individuals will park in the access aisle, blocking Plaintiff's use thereof.

**VIOLATION of 2010 CBC § 1129B.3.1.**  (<ins>"NO PARKING" – ground surface sign.</ins>)  The words "NO PARKING," which are required to be painted in the adjacent loading/unloading access aisles, are completely faded.  The words are no longer visible.  As a result, non-disabled patrons park in the loading/unloading access aisles, blocking Plaintiff from being able to use the access aisles.  Cars and trucks park or block the access aisles because the paint is faded and difficult to read.  Plaintiff cannot access the Property safely if she cannot use a designated disabled parking space which leads to an adjacent access aisle and accessible route of travel protected from other vehicles.  Plaintiff requires sufficient space to park and disembark from the car with her wheelchair.

**VIOLATION of 2010 CBC § 1129B.4.** (Surface signage.) The paint used for the designated accessible parking spaces is faded and cannot be seen. There is no compliant surface signage at the designated disabled parking space. The International Access Symbol is so faded and worn that it cannot be read. The street surface (pavement) signage is unreadable because the paint has faded.

**VIOLATION of 2010 ADAS § 502.3.** (Access aisles.) The adjacent loading/unloading access aisle must adjoin an accessible route to an accessible entrance. It does not. Plaintiff cannot access the Property safely unless there is an access aisle onto which she can disembark from her vehicle with her wheelchair. The access aisle must lead to an accessible, protected route, so that she can safely travel to and enter the business entrances.

**VIOLATION of 2010 CBC § 1133B.7.4; 2010 ADAS § 303.3.** (Path from parking – uneven surface.) The path of travel from the designated disabled parking spaces to the business entrances has damaged ground which is uneven. The damaged ground has pavement distresses. Parts of the ground surface are not flush. The surface of the ground within the designated path of travel leading into the entrances is not flat. This makes traveling in this area difficult. The path of travel from the designated disabled parking spaces to

the entrances runs into these pavement distresses which have caused changes in level greater than one-half inch, but no ramp is provided. These steep changes in level create uneven surfaces. The types of pavement distresses which exist include but are not limited to: alligator (fatigue) cracking; joint reflection cracking; potholes; asphalt bleeding; patching near utilities; block cracking; raveling; stripping; corrugation and shoving; and depressions. These pavement distresses are made worse and exacerbated by designs which do not follow the ADA Accessibility Guidelines. These areas should be fixed immediately because they pose a tripping and/or falling hazard. Plaintiff, a wheelchair user, cannot fully enjoy the premises because these conditions pose a risk that, among other things, she may fall out of her wheelchair, and/or that her wheelchair may become trapped in an uneven surface.

**VIOLATION of 2010 CBC § 1129B.3.1; 2010 ADAS § 502.6; ADAS § 4.6.3.** (Marked path of travel.) There is no marked path of travel from the designated disabled parking space to the business entrances. There is no safe way for Plaintiff to park in the designated disabled parking space and then travel to the business entrances on the Property. Plaintiff is forced to travel a dangerous route, behind parked cars and in the vehicle drive path, to move

from the space to the business entrances.  Plaintiff, a wheelchair user, faces an increased risk of injury if she has to travel in the path of vehicles because it is more difficult for drivers to see her, and she cannot quickly move out of the way of an oncoming vehicle.  Thus, she requires a safe path away from other vehicles.  The safe, accessible path must be clearly marked so that she can find it.

**VIOLATION of 2010 CBC § 1133B.7.4; 2010 ADAS § 303.3.** (Changes in level of ground surface.) Within the only parking space reserved for disabled patrons, the asphalt is uneven, with depressions, dips, divots, and uneven ground. There are sunken parts. There are cracked parts. This makes travelling in this area difficult.

**VIOLATION of 2010 CBC § 1133B.5.1; 1991 ADAS §§ 4.3.7, 4.8.1; 2010 ADAS § 403.3; 2016 CBC § 11B-403.3.** (Ramps.) The accessible route of travel has a slope greater than 1:20 (5%), but it is not a compliant ramp. Plaintiff, who uses a manual wheelchair, has difficulty with her mobility device on slopes that are not compliant ramps.

**VIOLATION of 2010 CBC § 1133B.5.2.** (Minimum width of ramps.)

COMPLAINT

There is no compliant ramp with a width of forty-eight inches (48"). Plaintiff requires adequate space to navigate on sloped surfaces and/or ramps with her wheelchair, and she cannot do so when the ramps are excessively narrow.

**VIOLATION of 2010 CBC § 1133B.5.3; 1991 ADAS § 4.8.2.** (<u>Least possible slope of ramp.</u>) There is no compliant ramp, with the least possible slope, leading into the businesses. The curb ramp exceeds the maximum running slope allowable. Plaintiff, who uses a manual wheelchair, has difficulty with her mobility device on slopes that are not compliant ramps.

**VIOLATION of 2010 CBC § 1133B.5.3; 1991 ADAS § 4.8.2.** (<u>Maximum slope of ramp.</u>) The slope of the curb ramp leading into the businesses is greater than 8.33%. The curb ramp exceeds the maximum running slope allowable. Plaintiff, who uses a manual wheelchair, has difficulty with her mobility device on slopes that are not compliant ramps.

**VIOLATION of 2010 CBC § 1133B.5.3.1; 2010 ADAS § 405.3; 1991 ADAS § 4.8.6.** (<u>Maximum cross slope of ramp.</u>) The cross slope of the ramp is greater than two percent (2%). Plaintiff, who uses a manual wheelchair, has difficulty with her mobility device on slopes that are not

compliant ramps.

**VIOLATION of 2010 CBC § 1133B.5.4; 2010 ADAS § 405.7; 1991 ADAS § 4.8.4.** (Level ramp landings.)  There is no compliant ramp with level ramp landings at the top and bottom.  Plaintiff requires level ramp landings at the top and bottom of each ramp to safely navigate her manual wheelchair.

**VIOLATION of 2010 CBC § 1133B.5.4; 2010 ADAS § 405.7.2; 1991 ADAS § 4.8.4(1).** (Width of ramp landings.)  There is no compliant ramp with ramp landings that are at least as wide as the ramp run leading to them. Plaintiff requires ample space to safely navigate her manual wheelchair on the ramp landings.

**VIOLATION of 2010 CBC § 1133B.5.4.2; 1991 ADAS §§ 4.8.4(2).** (Minimum landing width and length for top ramp landings.)  There is no compliant ramp with a top ramp landing that is sixty inches (60") wide and sixty inches (60") long as required.  Plaintiff requires ample space to navigate her wheelchair on ramp landings.

**VIOLATION of 2010 CBC § 1133B.5.4.2.** (Minimum landing length for

bottom ramp landings.)  There is no compliant ramp with a bottom ramp

landing that is seventy-two inches (72") long as required.  Plaintiff requires

ample space to navigate her wheelchair on ramp landings.

**VIOLATION of 2010 CBC § 1133B.5.4.6; 2010 ADAS § 405.7.4; 1991**

**ADAS § 4.8.4(3).**  (Minimum landing size for change of direction in ramp.)

There is no compliant ramp with a landing at least sixty inches (60") long

and sixty inches (60") wide where there is a change in direction in the ramp.

Plaintiff requires ample space to navigate her wheelchair around turns in

ramps.

**VIOLATION of 2010 CBC § 1133B.5.4.9.**  (Ramp curb.)  Required ramps

shall have a curb at least two (2) inches high, or a wheel guide rail two (2) to

four (4) inches high on each side of the ramp landing that has a vertical drop

exceeding four (4) inches and that is not bounded by a wall or fence.  The

ramp does not have a curb at least two (2) inches high, or an appropriate

wheel guide rail.  There is a risk that Plaintiff may fall out of her wheelchair,

or may not be able to navigate her wheelchair, when proper curbs or wheel

guide rails are not provided.

**VIOLATION of 2010 CBC § 1133B.7.1; 1991 § ADAS § 4.3.8.**  (<u>Walks/ sidewalks – changes in level.</u>)  The walk leading into the businesses does not have a continuous common surface because there are abrupt changes in level of more than one-half inch (1/2").  Plaintiff, a wheelchair user, cannot fully enjoy the premises because these conditions pose a risk that, among other things, she may fall out of her wheelchair, and/or that her wheelchair may become trapped in an uneven surface.

**VIOLATION of 2010 CBC § 1133B.7.4; 2010 ADAS § 303.3.**  (<u>Front door entrance threshold and weather strip changes in level.</u>)  Inside the building, the front door entrance threshold and weather strip has changes in level greater than one-half inch but provides no ramps.  This makes traversing this area difficult.

**VIOLATION of 2010 CBC Section 1118B.1; ADA 4.2.1.** (Lack of clear floor space). The floor space lacked clear width of thirty-two (32) inches at multiple points and thirty-six (36) inches continuously, as is required.  This is true of product displays, areas around the counter, and interior paths. Plaintiff cannot get around inside the business, because Plaintiff is blocked by product displays.

**VIOLATION of 2010 CBC § 1122B.5;1991 ADAS § 7.2; 2010 ADAS § 904.** (Transaction counters.) There is no lowered counter that is free and clear of clutter for disabled persons whose line of sight is lower. There was no lowered, thirty-six (36) inches or less, transaction counter for use by persons who cannot see high surfaces because of their disability. Without a lowered transaction counter, it is difficult for Plaintiff to use the counter to conduct business at the Property.

20.     Plaintiff personally encountered the foregoing barriers.

21.     These inaccessible conditions denied Plaintiff full and equal access, and caused her difficulty, humiliation, and/or frustration.

22.     The barriers existed during each of Plaintiff's visits in January 2020, November 2020 and December 2020.

23.     Plaintiff alleges that Defendants knew that the foregoing architectural barriers prevented access.  Plaintiff will prove that Defendants had actual knowledge that the architectural barriers prevented access, and that the noncompliance with the ADA Standards, ADA Accessibility Guidelines, and/or the California Building Code was intentional.

24.     Plaintiff intends to visit the Property again soon.  Currently, Plaintiff is reasonably deterred from returning to Defendants' public accommodation facilities

20

COMPLAINT

because of the knowledge of barriers to equal access, relating to Plaintiff's

disabilities, that continue to exist at the Property.

25.    Defendants have failed to maintain in working and useable conditions

those features necessary to provide ready access to persons with disabilities.

26.    Defendants have the financial resources to remove these barriers

without much expense or difficulty in order to make their Property more accessible

to their mobility impaired customers.  The removal of these barriers is readily

achievable.  The United States Department of Justice has determined that removal

of these types of barriers is readily achievable.

27.    Defendants refuse to remove these barriers.

28.    On information and belief, Plaintiff alleges that Defendants' failure to

remove these barriers was intentional, because the barriers are logical and obvious.

During all relevant times, Defendants had authority, control, and dominion over

these conditions; thus, the absence of accessible facilities was not a mishap, but

rather an intentional act.

29.    These barriers to access are described herein without prejudice to

Plaintiff citing additional barriers to access after further inspection by Plaintiff's

access agents.  *See Doran v 7-ELEVEN, Inc.,* 524 F.3d 1034 (9th Cir. 2008)

(holding that once a plaintiff encounters one barrier at a site, a plaintiff can sue to

have all barriers that relate to his or her disability removed, regardless of whether

he or she personally encountered them).

## IV. FIRST CAUSE OF ACTION:  VIOLATION OF THE

## AMERICANS WITH DISABILITIES ACT OF 1990

## (42 U.S.C. § 12101, *et seq.*)

(Against All Defendants)

30.     Plaintiff alleges and incorporates by reference each and every allegation contained in all prior paragraphs of this complaint.

31.     Title III of the ADA prohibits discrimination against any person on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or operates a place of public accommodation.  42 U.S.C. § 12182(a).

32.     Defendants discriminated against Plaintiff by denying her "full and equal enjoyment" and use of the goods, services, facilities, privileges, and/or accommodations of Defendants' facility during each visit, and each incident of a deterred visit.

33.     The acts and omissions of Defendants herein were/are in violation of Plaintiff's rights under the ADA and the regulations under 28 C.F.R. Part 36, *et seq.*

34.      Pursuant to the ADA, discrimination is a "failure to make reasonable modifications in policies, practices or procedures, when such modifications are

necessary to afford goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii).

35.    The ADA requires removal of architectural barriers in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv) ("discrimination includes … a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, … where such removal is readily achievable"). The term "readily achievable" is defined as "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12181(9). Barriers are defined by reference to the ADA Standards of Accessible Design ("ADAS"), found at 28 C.F.R., Part 36, including the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"), at Part 36, Appendix A.

36.    If removal of any barrier is not readily achievable, a failure to make goods, services, facilities, or accommodations available through alternative methods is also prohibited if the alternative methods are readily achievable. 42 U.S.C. § 12182(b)(2)(A)(v).

37.    Plaintiff alleges that Defendants can easily remove the architectural

barriers at their facility without much difficulty or expense, and that Defendants violated the ADA by failing to remove those barriers because removal was readily achievable.  There are companies in the area which can repaint parking areas for as little as $350.  Defendants can afford such costs, which are a fraction of what Defendants receive in (rental or business) profits in connection with such a large and expensive property.

38.    Alternatively, if it was not "readily achievable" for Defendants to remove barriers at their facilities, Defendants violated the ADA by failing to make the required services available through alternative methods which are readily achievable.

39.    On information and belief, the facility was modified after January 26, 1992, mandating compliance with accessibility requirements under the ADA.

40.    The ADA requires that facilities altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible.  42 U.S.C. § 12183(a)(2).

41.    Plaintiff alleges that Defendants altered the facilities at the Property in a manner that violated the ADA, and/or failed to make the Property readily accessible to physically disabled persons, including Plaintiff, to the maximum extent feasible.

42.    The ADA also requires reasonable modifications in policies, practices,

COMPLAINT

or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.  42 U.S.C. § 12182(b)(2)(A)(ii).

43.   Plaintiff alleges that Defendants violated the ADA by failing to make reasonable modifications in policies, practices, or procedures at the Property when these modifications were necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations.

44.   Plaintiff seeks a finding from this Court that Defendants violated the ADA, so that she may pursue damages under California's Unruh Civil Rights Act.

45.   Here Defendants' failure to make sure that accessible facilities were available and ready to be used by Plaintiff was/is a violation of law.

46.   Plaintiff would like to continue to frequent Defendants' property because it is close to her home.  However, she is deterred from doing so because she has been discriminated against and is aware of accessibility barriers at the Property.

47.   Among the remedies sought, Plaintiff seeks an injunction order requiring compliance with state and federal access laws, and remediation of all of the existing access violations at the Property.

COMPLAINT

## V. SECOND CAUSE OF ACTION:  VIOLATION OF THE

## UNRUH CIVIL RIGHTS ACT

### (Cal. Civ. Code §§ 51-53)

(Against All Defendants)

48.     Plaintiff repleads and incorporates by reference, as though fully set forth herein, the allegations contained in all prior paragraphs of this complaint.

49.     California Civil Code § 51 states, in part:  "All persons within the jurisdictions of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

50.     California Civil Code § 51 also states, in part:  "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

51.     California Civil Code § 51(f) specifically incorporates, by reference, an individual's rights under the ADA into the Unruh Civil Rights Act ("UCRA").

52.     The UCRA also provides that a violation of the ADA, or California state accessibility regulations, is a violation of the UCRA.  Cal. Civ. Code § 51(f); *see Arnold v. United Artists Theatre Circuit, Inc.*, 866 F. Supp. 433, 439 (N.D. Cal. 1994).

53.     Defendants' above-mentioned acts and omissions have violated the

COMPLAINT

UCRA by denying Plaintiff her rights to full and equal use of the accommodations, advantages, facilities, privileges, and services they offer, on the basis of Plaintiff's disability.

54.     Defendants' above-mentioned acts and omissions have also violated the UCRA by denying Plaintiff her rights to equal access pursuant to the ADA; and, thus, Defendants are liable for damages.  *See* Cal. Civ. Code § 51(f), 52(a).

55.     Because Defendants' violation of the UCRA resulted in difficulty, discomfort, and/or embarrassment for Plaintiff, Defendants are each also responsible for statutory damages, such as a civil penalty.  *See* Cal. Civ. Code § 55.56(a)(c).

//

//

//

//

//

//

//

//

//

//

COMPLAINT

56.     Plaintiff was (actually) damaged by Defendants' wrongful conduct. She seeks actual damages, and statutory minimum damages of four thousand dollars ($4,000) for each offense.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, as follows:

1.  For injunctive relief compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.  Note: Plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act.

2.  Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 per each offense.

3.  Reasonable attorney fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. § 12205, and Cal. Civ. Code § 52.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


DATED: December 29, 2020     THE LAW OFFICE OF HAKIMI & SHAHRIARI


By:   /s/ Peter Shahriari
      PETER SHAHRIARI, ESQ.
      Attorney for Plaintiff Amber Machowski

COMPLAINT